## E. H. PARDEE ET AL. V. MARTHA ADAMSON.

Decided June 8, 1898.

**1. Land District—Organization—Procuring Records.**

The Act of April 30, 1874, creating San Saba Land District, which included McCulloch County, by its terms not only created but organized such district, and no further organization was necessary to entitle the county surveyor of San Saba County, as surveyor of the district, to make a survey for the location of a land certificate in McCulloch County; nor was it necessary to the validity of such survey that he should first procure certified transcripts of previous surveys and locations in the counties embraced in such district, as required by the act.

**2. Location—Recognition by Land Commissioner.**

If a party, in making his location, has complied with the law, the refusal of the Commissioner of the General Land Office to recognize its validity will not affect his legal rights.

**3. Location—Prior Survey—Evidence—Certificate.**

The introduction of field notes of a previous unpatented survey conflicting with plaintiff's location is not evidence of its prior appropriation, except in connection with evidence that such survey was made by virtue of a valid land certificate.

APPEAL from McCulloch. Tried below before Hon. J. O. WOODWARD.

*Walter Anderson, Franklin & Cobbs,* and *Alexander, Clark & Hall,* for appellants.

*Jenkins & McCartney* and *F. M. Newman,* for appellees.

FISHER, CHIEF JUSTICE.—This is a suit by the appellee in trespass to try title against the appellants to recover a tract of land in McCulloch County, Texas, located by virtue of Meshack Cummings' certificate. The case was tried before the court below, without a jury, and judgment rendered in favor of the plaintiff.

The plaintiff, as title, introduced in evidence a certified copy from the

General Land Office of the duplicate certificate, first class, issued to Meshack Cummings, February 12, 1872; a certified copy from the General Land Office of the field notes of the survey made in McCulloch County, Texas, by virtue of the Cummings certificate, filed in the Land Office December 17, 1874. The survey was made November 24, 1874, by M. H. Wadsworth, district surveyor of the San Saba land district. The facts show that Wadsworth was at that time county surveyor of San Saba County. The plaintiff was the only heir of Meshack Cummings.

There is some evidence in the record which tends to show that the surveyor of San Saba County or of the San Saba land district did not procure certified transcripts of all surveys and locations of land made by legal surveyors in the counties embraced in the San Saba land district, and transcripts of all records pertaining thereto; which transcripts and records, so far as related to McCulloch County, were, previous to 1874, either in the Land Office or in Bexar land district; that county, previous to 1874, being a part of the Bexar land district. But on the other hand there is some evidence tending to show that the records of the surveyor's books of San Saba County were to some extent mutilated, and some portions of them lost. Therefore, it can not be said that the fact is conclusively established that the surveyor of the San Saba land district did not perform his duty, as required by law, and collect and preserve these transcripts and records.

It is unnecessary for us, even as to this latter subject, to make any finding; and in fact, in view of the disposition that we make of the case, the finding that we have made as to the existence and location of the Cummings certificate and the heirship of plaintiff is all that is necessary, because, if this is a valid location, the plaintiff is entitled to recover, and the real question in the case is whether Surveyor Wadsworth was the proper surveyor to locate the certificate in question; or in other words, whether his act in locating the certificate was legal, the contention being, upon the part of the appellants, that at the time of the location the territory embraced within McCulloch County was a part of the Bexar land district, and not a part of the San Saba land district.

On the 30th of April, 1874, the Legislature passed the following law, which went into effect from and after its passage:

"Section 1. Be it enacted, etc., That the counties of Brown, Coleman, and Runnels, and the territory embraced in said counties, are declared to constitute the land district of Brown; and the office of said district shall be kept at the town of Brownwood, in Brown County; and the county surveyor of Brown County shall be the surveyor of said land district.

"Sec. 2. That the counties of San Saba, McCulloch, and Concho, and the territory embraced in said counties, are declared to constitute the land district of San Saba; and the principal office of said district shall be kept at the town of San Saba, in San Saba County; and the county surveyor of San Saba County shall be the surveyor of said San Saba land district.

"Sec. 3. That the said surveyors of the land districts created by this

act shall, within one year from the passage hereof, and they are hereby required to, procure certified transcripts of all surveys and locations of land made by legal surveyors in the counties embraced in their respective land districts, and transcripts of all records pertaining thereto, which shall be kept, and continue to be kept, for all future surveys and locations, and all past surveys and locations, in separate books for each county, and shall keep the same in good condition at the respective principal offices of such districts."

This statute, in express terms, makes McCulloch County a part of the San Saba land district, and requires the county surveyor of San Saba County to perform the duties and functions of a surveyor for the entire land district. The third section of the act requires the surveyor, within one year from the passage thereof, to procure transcripts of all surveys and locations made in the counties comprising the district, and transcripts of all records pertaining thereto, which shall be kept in a separate book for each county in the principal offices of the district. The failure of the surveyor to comply with the provisions of the third section of the act did not deprive him of his power to make locations within the district. In fact, it was his duty, under the law, to perform official work within his district in the way of locating valid land certificates, although he may never have in fact complied with that provision requiring him to collect and preserve the records of surveys located in the several counties. By the terms of this law, he was as much the legally constituted surveyor of McCulloch County—a part of the San Saba land district—as any county surveyor is of the county of his residence. And it has never been held that those provisions of the law that require county surveyors to keep and preserve records of their official work would deprive the owners of their locations, made under valid certificates by such surveyors.

The statute which created the land district did not make the exercise of power in making locations by the surveyor depend upon the performance of the duties required in section 3, and it is clear that it was never the purpose that a performance of these duties should be a prerequisite to the exercise of the power upon the part of the surveyor in locating a valid certificate. In fact, this was held in the case of Ranch and Cattle Co. v. Waldstein, 28 S. W. Rep., 261.

It is contended by the appellants in their assignments of errors that the San Saba land district had never been organized, and they offered some evidence from the Commissioner of the General Land Office and the present county surveyor of San Saba County to that effect, and also to the effect that the Commissioner of the Land Office heretofore had not recognized the validity of the Cummings location.

If a party in making his location has complied with the law, the fact that a subsequent county surveyor or a Commissioner of the Land Office might refuse to recognize its validity, would not affect his legal rights or the validity of the survey.

By the terms of the statute the San Saba land district was not only created but organized when the act in question went into effect. The law

itself was an organization of the land district, and it required no further act upon the part of any county or district surveyor or the Commissioner of the Land Office, in order to put the land district upon a legal footing.

There was no error in the court refusing to admit in evidence the field notes of section 81, as complained of in the first assignment of error. There was no patent to this section offered, nor was there offered in connection with the field notes, which were excluded, any certificate or certified copy thereof. It is supposed that these field notes were offered for the purpose of showing that a part of the land in controversy had been appropriated by the survey of section 81. The field notes evidencing a survey of the land alone, of itself was no evidence of right; and, in view of the fact that the land had never been patented, the survey could only be evidence of right when it was shown that it was made by virtue of a valid land certificate. The objection to the introduction of these field notes was for the reason that they were not accompanied with a land certificate or a copy thereof authorizing said survey. We do not think that there was any error in this ruling.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.